## REINHARDT v. WEYERHAEUSER TIMBER CO.

### No. 10549.

Circuit Court of Appeals, Ninth Circuit.

June 14, 1944.

Wm. P. Lord and Ben Anderson, both of Portland, Or., for appellant.

Carl E. Davidson and John F. Reilly, both of Portland, Or., for appellee.

Before STEPHENS and HEALY, Circuit Judges, and BOWEN, District Judge.

BOWEN, District Judge.

Appellant (hereinafter called plaintiff or employe) was injured October 10, 1941, while working for appellee (hereinafter called defendant or the Company) in its logging operations and was necessarily hospitalized. On October 24th following, while he was still in the hospital, plaintiff was visited by defendant's adjuster with the result that plaintiff and defendant then executed a compensation and release agreement providing in part that

"The Company hereby agrees to pay said employe, whether it is liable to him for his injuries or not, and the employe agrees to accept as compensation for his injuries $2.-50 per day for six days per week, such payments to continue as long as said employe is totally disabled.

"In the event the employe shall not make a complete recovery from said injuries and there shall result some permanent disability, then the extent of such permanent disability shall be rated according to the schedule contained in Section 49-1827.6 of Oregon Code Annotated 1935 Supplement, which the parties agree to adopt for such rating purposes only. * * *"

And by the agreement defendant was released from all liability except the payments provided in the contract.

Plaintiff commenced this action by filing on May 27, 1942, his complaint for damages for personal injuries, basing federal court jurisdiction on diversity of citizenship and requisite jurisdictional amount. For answer, defendant admitted such jurisdiction and admitted and denied certain other facts, and set up as an affirmative defense the above noted agreement and alleged that pursuant thereto defendant had paid plaintiff all sums due under the contract and had expended large sums for plaintiff's medical and hospital services, tendered to plaintiff further complete performance of the contract by defendant, and prayed for an injunction against further prosecution of plaintiff's action. Plaintiff replied, alleging that the agreement was induced by fraud and that he did not understand it.

The pre-trial order discloses that the parties agreed that the contract of October 24, 1941, if not set aside by the court, "is a complete defense to this action". The trial court sitting without a jury held the agreement was free from fraud, was ratified by plaintiff after he understood it, and was a valid contract, and accordingly entered judgment perpetually enjoining plaintiff from prosecuting damage actions against defendant. Plaintiff appeals.

■ All questions urged on this appeal concern the ultimate question whether such compensation and release agreement was a valid one. Under the doctrine of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, that question is to be determined by the Oregon law, since no rights are asserted under the Constitution or laws of the United States. Plaintiff's contention made in his brief that he was entitled to a jury trial was waived at the argument before this court.

At the trial, it was disclosed that defendant's adjuster went to the hospital on the occasion already mentioned and discussed the proposed contract with plaintiff, explaining the nature of the contract, the extent of the payments and the effect of the contract as depriving plaintiff of his right to sue for damages for his injuries in case the contract was signed. Plaintiff, however, testified in effect that he did not read the contract until a day or two after

signing it; never asked any of the employees of defendant to explain it to him; that all he remembers of the adjuster's statements was that he had brought a compensation check and some papers for the plaintiff to sign but plaintiff denies that he ever then or later talked to the adjuster about the meaning of the contract; and says that he does not recall discussing the contract with anybody before he left the hospital, although he had a copy of the contract all the time he was at the hospital after he signed it;

That he talked to his wife about the contract and she read it after he had been home from the hospital a couple of days (in November, 1941); that he himself studied it after he returned home from the hospital; that (in December, 1941) he went to a library and looked up some of the words in the contract in order to improve his understanding of it; and that he reads newspapers and story books and has had some experience with rent receipts, notes and installment contracts. In response to the trial court's request he read a part of the contract, whereupon the court commented he read well; he told the court he understood the contract after he had read it a couple of times; and on cross-examination he said he continued to accept compensation checks from defendant after he understood the contract.

The payments under the contract were made by check semi-monthly. Some of such checks were received by plaintiff before he studied the contract at the library in December, 1941, and some of them afterwards. Plaintiff received and cashed altogether nine of such semi-monthly checks for the period beginning October 10, 1941, and continuing to and including February 27, 1942, shortly before he returned to work. He also executed eight receipts for the second to the ninth of such payments. All of the payments and receipts referred to the compensation and release agreement.

It was testified plaintiff made no complaint and expressed no dissatisfaction to defendant concerning the contract or defendant's treatment of him until he filed this action on May 27, 1942. He has not repaid or tendered in court any of the money which defendant has paid on account of the contract or the medical and hospital expenses.

■ The Supreme Court of Oregon has held that where the employer rejects the State Workmen's Compensation Act, O.C.L.A. § 102-1701 et seq., as he is privileged by that Act to do (see decision of Judge McColloch in Shirley v. Oregon Lumber Co., 56 F.Supp. 341, U.S.Dist. Court of Oregon) and as the defendant did in this case, an employer may enter into a valid contract with an insurance company for compensating the employee in case of personal injury to the employee. Blessing v. Ocean Accident & Guarantee Corp., 152 Or. 632, 54 P.2d 300. Where the employer rejects that Act we know of no reason why, if they wish, the employer and employee cannot, as they did here, privately agree after the employee is injured that the employer himself will compensate the employee in accordance with the provisions of the contract and that in return for such compensation the employee will release the employer from any and all liability except the obligation to make the contract payments.

In the case of Broad v. Kelly's Olympian Co., 156 Or. 216, 66 P.2d 485, which involved the validity of a release, the Supreme Court of Oregon reviewed a number of previous Oregon decisions and at page 492 of 66 P.2d, said:

"When we said in Peluck v. Pacific Machine & Blacksmith Co., supra [134 Or. 171, 293 P. 417], that 'courts look with favor upon settlement of controversies which may lead to litigation,' we meant it. The significance of those words would be entirely destroyed if we should now hold that, although nothing was done to prevent the plaintiff from reading the release or having it read to him, he nullified it by saying that Gill told him it was 'just a formality.' Proof in substantiation of a charge of fraud 'should be clear and satisfactory.' Metropolitan Casualty Ins. Co. v. [N.B.] Lesher, [Inc.], 152 Or. 161, 52 P.2d 1133, 1135.

"We conclude that the record contains no substantial evidence in support of the plaintiff's pleading that he was deceived into signing the release."

■ What was said in that quoted statement of the Oregon court aptly applies to the facts in this case. We are convinced from the evidence that, even if plaintiff who was not illiterate failed to fully understand the adjuster's explanation of the agreement at the time it was signed, plaintiff thereafter not only had ample time to read and study it himself or to get some one else to do so for him, but that he ac-

tually did intelligently study it himself after he signed it, that his wife also read it, that he understood it in December, 1941 or before, that after he understood it he accepted and receipted for a number of contract payments, and that before he commenced this action several months after the contract was made he never intimated to defendant any lack of understanding of or dissatisfaction with the contract. We are unable to find from the record here any convincing evidence of deception or attempted deception of plaintiff by defendant.

In these circumstances the court below rightly held that the agreement was free from fraud, was ratified by plaintiff after he understood it and was a valid contract, and that plaintiff should be perpetually enjoined from prosecuting damage actions in defiance of the contract.

Affirmed.